## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF MINNESOTA, *by its* *Attorney General Keith Ellison* | Case No. 3:18-cv-14999(BRM)(LHG) |
| Plaintiff, | |
| v. | |
| SANOFI-AVENTIS U.S. LLC, et al., | |
| Defendants | |

## JOINT STIPULATED PROTOCOL FOR THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

The parties to the above-captioned litigation (the "Action" or this "litigation"), through their counsel, have stipulated and agreed to give effect to this Joint Stipulated Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol"), to facilitate discovery in this litigation.

The parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding its good-faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be impossible or unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

All productions in this litigation are subject to the protective order separately entered by the Court at Dkt. 299 in *In re Insulin Pricing Litigation*, 17-cv-699.

## I.   GENERAL.

A.   The procedures and protocols set forth in this ESI Protocol shall govern the production of ESI and hard copy documents in this matter, unless the parties agree in writing to change them or they are changed by the Court. This ESI Protocol is intended to aid the parties by providing a more predictable, cost-effective, and efficient management structure for the maintenance and production of electronic discovery. Nothing in this ESI Protocol shall supersede the parties' obligations under the Federal Rules of Civil Procedure.

B.   The parties shall meet and confer in good faith on issues regarding ESI, as necessary, including issues relating to custodians, data sources and search methodologies (*e.g.*, search terms and other methods of identifying responsive ESI), that arise under this ESI Protocol or otherwise. In the event the parties cannot reach an agreement on a disputed matter, the parties shall submit the matter to the Court.

## II.   DEFINITIONS.

A.   **"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

B.   "**Document Family**" refers to a group of related ESI that includes parent and child documents as maintained in the ordinary course of business (e.g., a parent email and any attachments thereto).

C.   **"Electronically stored information"** or **"ESI,"** as used herein, means, as referenced in the Federal Rules of Civil Procedure, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

D. **"Extracted Text"** means the text extracted from an electronic document, and includes all header, footer and document body information when reasonably available.

E. **"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

F. **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created metadata.

G. **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer or other device on which data is or was stored.

H. **"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The metadata fields to be produced are listed in Exhibit 1.

I. **"Native," "Native Format,"** or **"Native Data Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

J. **"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

K. **"Parties"** means or refers collectively to the plaintiff and defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

L.    **"Producing Party"** means or refers to any party in the litigation from which production of ESI or hard copy documents are sought.

M.    **"Requesting Party"** means or refers to any party in the litigation seeking production of ESI or hard copy documents.

III.    **PRESERVATION.**

A.    **Deleted Files and Litigation Holds**.

To help contain costs, the parties shall not be obligated under this ESI Protocol to produce or preserve ESI that was deleted or lost as a result of the routine, good-faith operation of an ESI system prior to the date upon which the duty to preserve ESI and documents in connection with this litigation arose. Nothing in this provision limits or expands a party's obligation to search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a party's possession, custody, or control, provided such search is otherwise consistent with and does not exceed the party's obligations under the Federal Rules of Civil Procedure.

If a Producing Party learns that responsive ESI that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue. Nothing in this agreement alters the Producing Party's obligation to demonstrate the unavailability of such information pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

**B.**     **Types of ESI that Need Not Be Preserved or Searched.**

Pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), a party need not provide

discovery of electronically stored information from sources that the party identifies as not

reasonably accessible because of undue burden or cost. On motion to compel discovery

or for a protective order, the party from whom discovery is sought must show that the

information is not reasonably accessible because of undue burden or cost. The parties

agree that there is no need to preserve or collect ESI from the following sources, which

are deemed to not likely contain relevant information and to be not reasonably accessible:

1.     random access memory (RAM), temporary files, or other ephemeral data;

2.     on-line access data such as temporary internet files, histories, caches, cookies,

etc.;

3.     data in metadata fields that are frequently updated automatically, such as last-

opened dates;

4.     Shadowed, damaged, residual, "slack," "fragmented," or "unallocated" data;

5.     data stored on photocopiers, scanners, and/or fax machines;

6.     data maintained in any electronic backup system for the purpose of system

recovery or information restoration, including but not limited to, system recovery

backup tapes or other media, continuity of operations systems, and data or system

mirrors or shadows, if such data are routinely purged, overwritten, or otherwise

made not reasonably accessible in accordance with an established routine system

maintenance policy;

7.     operating system files, executable files;

5

8. electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; and

9. structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.).

**C.** **Types of ESI that Need Not Be Preserved or Searched at Present.**

The Parties agree that there is no need, at this time, to search ESI from the following sources (although Parties must take reasonable steps to preserve such ESI if potentially responsive), but all Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains unique relevant information:

1. Any other source a party has identified to the other party as not reasonably accessible pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

2. Call logs, data, voicemails, text and/or instant messages, or other media stored on or related to personal computers or personal devices (including mobile phones) of the corporate party's employees.

The parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations. The parties are not required to take any such backup media out of the ordinary rotation.

IV.     **SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.**

A.     **Use of Search Terms.**

The parties shall identify ESI by: (a) identifying and selecting custodians and sources most likely to possess relevant documents; and (b) applying agreed-upon search terms to identifiable data repositories and custodian data sources in accordance with the provisions of Section IV.C. The parties may leverage technology workflows, including email threading (for internal assessment only—not at the time of production) and predictive coding, technology assisted review, or other form of machine searching not based on keywords (collectively, "TAR") in lieu of search terms in accordance with the provisions of Section IV.B. However, if either party intends to leverage such technology workflows, the Producing Party must inform the Requesting Party of its intention to use TAR, meet-and-confer with the Requesting Party regarding its intended use of TAR, and come to an agreement with the Requesting Party regarding how such technologies will be implemented. Each party shall be primarily responsible for identifying custodians and custodial data sources likely to contain relevant documents; however, the parties agree to confer as to custodian lists. The fact that a document may have been retrieved by application of search terms or TAR shall not prevent any party from withholding from production such document if permissible under the Federal Rules of Civil Procedure. Conversely, the absence of a search term hit or retrieval by TAR methodology for a given document does not automatically render it non-responsive. To the extent any party identifies responsive ESI or documents not hit upon by the search term filters noted above, all such non-privileged documents should be produced, subject to the Producing

Party's objections to discovery requests and rights under this ESI Protocol and the Federal Rules of Civil Procedure.

**B.**     **Use of Technology Assisted Review.**

Any party that opts to use TAR agrees to disclose that intent to the Requesting Party before the Producing Party employs any TAR and meet-and-confer with the Requesting Party to implement an appropriate protocol. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections or culling. The parties will meet and confer regarding any TAR issues that arise after the Initial Exchange Date described below.

**C.**     **Electronic Searches.**

On July 1, 2020, defendants shall serve on plaintiff defendants' responses, objections, and productions of documents made prior to July 1, 2020, in response to plaintiffs' requests for production served in *In re Insulin Pricing Litigation*, 17-cv-699.  Within six (6) business days thereafter, defendants shall also serve on plaintiff the following as negotiated in *In re Insulin Pricing Litigation*:  a list of (a) custodians within its organization likely to possess relevant ESI, along with each such custodian's job title and a brief summary of his or her primary responsibilities; (b) agreed-upon keyword search terms and strings (including, where relevant, semantic synonyms, code words, acronyms, abbreviations, non-language alphanumeric associational references to relevant ESI, etc.) to be used when searching for ESI; (c) a list of non-custodial data sources (such as databases, servers, group shares, cloud-based storage, etc.) that may contain relevant information; and (d) any proposed exclusion criteria (including, but not limited to, date restrictions) related to ESI searches.The parties will continue to meet and confer

regarding any search process issues as necessary and appropriate during discovery. Nothing in this search protocol, or the subsequent designation of any search terms, shall operate to limit a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority to conduct a reasonable search for responsive documents. This ESI Protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests, and it does not prevent any party from undertaking searches of its own ESI for any purpose at any time.

**D.**    **Supplementation of Searches for ESI.**

Each party may, upon reviewing documents actually produced in the litigation, and conducting other investigation and discovery, request that additional search terms be employed and/or files from additional custodians be searched. The Parties agree to meet and confer in good faith concerning any such requests.

**V.**    **PRODUCTION OF HARD COPY AND ESI DOCUMENTS**

**A.**    **Deduplication.**

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each party may use reasonable, good-faith efforts to avoid the production of duplicate ESI. Global de-duplication is to be executed at the document family level. Deduplication shall be done on exact duplicate documents based on MD5 or SHA-1 hash values.

1.    No party shall identify and/or eliminate duplicates of hard-copy documents or ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

2.    For exact duplicate documents, the Producing Party will produce the metadata described in Section V for the Single Production Copy to the extent available, as

well as any such metadata that differs for the duplicate document(s). If more than one custodian possesses a duplicate, the Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "duplicate custodian field") in addition to a separate field of data identifying the custodian whose document is produced.

3.     If during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Requesting Party, and such consent shall not be unreasonably withheld.

**B.     Email Threading.**

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. However, a Producing Party may only use email thread suppression tools if they preserve and produce to the Requesting Party the metadata associated with lesser included emails within an email thread. The metadata may be linked to the image of the produced email. The Parties will meet and confer regarding any requests for the production of images of lesser-included emails, and will not unreasonably deny good faith requests for de-threading of particular email threads. This clause is not to be construed to require the producing party to produce metadata for lesser included emails that would not otherwise be produced but for the use of email thread suppression tools. The parties and their document vendors will meet and confer regarding the production of metadata for lesser included emails to ensure that this metadata is appropriately searchable.

10

C.     **Production of Hard Copy Documents – Format.**

All documents originating in paper format will be produced as black-and-white or color (as applicable), single-page, 300 DPI, Group IV* TIFF images, with OCR text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. The parties will accommodate reasonable requests for production of specific images in color to the extent available.

D.     **Production of ESI – Format.**

1.     All responsive ESI, except that which is produced in Native Format pursuant to paragraph V.D.2, shall be produced as black and white, single-page, 300 DPI, Group IV* TIFF files with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2.

Responsive spreadsheets, presentations, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are redacted pursuant to Section V.H.1 of this Protocol. Responsive ESI produced in Native Format shall be produced with all metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. Each ESI produced in Native Format shall be assigned a unique Bates number, and for each single page placeholder TIFF image stamped with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT", and the corresponding confidentiality designation under the Protective Order will be produced. No party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a

copy of any produced Native Format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

**E.      Appearance and Content.**

Responsive ESI that presents imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems. Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party. The Requesting Party agrees to raise these issues within a reasonable timeframe.

**F.      Color.**

If a document is being produced in non-native format, the producing party shall provide a color image for any document where the color is reasonably necessary to decipher the complete meaning, context, or content of the document. This includes, but is not limited to Word documents containing redlining, and any charts (Excel, PowerPoint slides, or otherwise) where different colors are used to differentiate among the data being displayed in the document. Producing Parties shall make reasonable efforts to address imaging and formatting issues identified in good faith for the production of a color image of specific documents originally produced in greyscale, non-native format where the original document displayed such color and color is reasonably necessary to decipher the complete meaning, context, or content of the documents. If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably

deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

**G.**     **Prior Production.**

The parties reserve their right to produce materials from a prior proceeding or litigation to the extent those materials are non-privileged and responsive to a Requesting Party's requests. The Parties will meet and confer regarding any requests for the reproduction of materials that were included in a prior production, including as to the format of production. The Producing Party will not unreasonably deny good faith requests for native files, color versions, metadata, and other formats that are consistent with the specifications for files produced initially in this litigation.

**H.**     **Production of Redacted Documents/Information.**

   **1.**     **Redactions**. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form. The producing party may also produce in a redacted form information in a responsive document that is: (1) subject to federal, state, or foreign privacy requirements (*e.g.*, HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR), (2) constitutes irrelevant personal information of an intimate or private nature, or

private data that this objectively irrelevant to this Action. However, redactions based on foreign privacy requirements may be made only where the ESI in question is subject to that foreign privacy requirement. The parties are prohibited from redacting names, positions, titles, or professional contact information or third parties identified in relevant, responsive documents, data, or information produced in discovery in this Action. In addition to redactions for privacy and privilege, a Producing Party may redact uniquely identifying information related to non-diabetes products. Examples of "uniquely identifying information" include, but are not strictly limited to, brand or generic names of non-diabetes products, units and/or dosages of non-diabetes products, National Drug Codes of non-diabetes products, indications of non-diabetes products if they are specific enough to allow for unique product identification, the names of disease states or therapeutic areas associated with non-diabetes product if they are specific enough to allow for unique product identification, and names of direct competitor drugs for non-diabetes products. A Producing Party may not redact any substantive information regarding non-diabetes products, including, but not limited to, information regarding strategies, pricing, patient adherence, revenues, profits, or sales. The redactions for non-diabetes, unique product identifying information should not be intertwined with responsive information such that its redaction will interfere with the Receiving Party's ability to review responsive documents. The Parties will meet and confer regarding any disputes related to any redaction, and will not unreasonably deny good-faith requests for production of redacted information.

**2.**     Nothing in Paragraph V.H.1. shall allow for any delay in the production of documents as a result of these redactions.

**3.**     Any redactions under Section V.H.1 shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted – Privileged," "Personal Information, "Other Drug Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.

**4.**     Native Excel or other spreadsheet files that are redacted may be produced in TIFF format or by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," and shall make clear the reason for the redaction (e.g., "Redacted Privilege"), provided that such overwriting does not impact any other, non-privileged cells or information in the spreadsheet (*e.g.,* if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-privileged cells in the spreadsheet). If a privilege redaction does impact non-privileged cells/information, the Parties shall meet and confer to discuss. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

**5.**     Native Excels or other spreadsheet files, PowerPoint or other presentation files that are redacted for privilege or privacy may be produced as black-and-white or

color (as applicable), single-page TIFF files with OCR text provided in document

level text files, with load files pursuant to Exhibit 2, which shall include all

information contained in the original file, including, but not limited to, speaker

notes and "hidden" slides, with any redaction clearly delineated. If the file

contains external video or audio components, the video or audio will be produced

as native files unless redacted.

I.    **Confidentiality of Produced ESI.**

    1.    Documents and ESI shall be produced pursuant to the terms of the Stipulated

Protective Order entered at Dkt. 299 in *In re Insulin Pricing Litigation*, 17-cv-

699. Any objections to production shall otherwise be made pursuant to the Local

Rules, Federal Rules of Civil Procedure or the Federal Rules of Evidence. If the

Producing Party is producing ESI in TIFF Format subject to a claim that it is

protected from disclosure under any protective agreement or confidentiality order,

or any agreement entered into or Order issued in this matter, the document shall

be stamped electronically on each page in accordance with the Stipulated

Protective Order.

    2.    If the Producing Party is producing ESI in Native Format subject to a claim that it

is protected from disclosure under any protective agreement or confidentiality

order, or any agreement entered into or Order issued in this matter, then the

designation shall be included in a separate field in the .dat load file, as well as the

TIFF placeholder or where not produced with a TIFF placeholder, the storage

device (e.g., CD, USB, or hard drive) containing such native ESI data shall be

labeled in accordance with the Stipulated Protective Order.

**J.     Other Production Specifications.**

All productions will include these additional specifications:

1.     Delimited image load/unitization file for images (.opt and .lfp) shall be provided pursuant to Exhibit 2;

2.     Delimited metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit 2, and shall include the metadata fields identified below (Exhibit 1);

3.     Document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

4.     Bates number branding and Confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

5.     A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

6.     Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001- with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

**7.**     PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein.

**8.**     Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s).

## VI.     FAMILY RELATIONSHIPS OF ESI.

## A.     Family Relationships.

For ESI, families (as defined above) must be preserved by assigning sequential Bates numbers to all files within a parent-child group (in accordance with section V(D) of this protocol), and by providing accurate attachment ranges for those files in the metadata fields required. The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced; however, non-responsive parent documents must be produced if they contain any responsive attachments. Where the Parties withhold a fully non-responsive attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1. No extracted text need be provided. The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive." The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness, and such request will not be unreasonably denied by the Producing Party. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

1. Where an electronic document that is part of a family is withheld, and its relationship to the rest of that document family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

2. If a member of an ESI document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the parties shall meet and confer under to attempt to resolve any issues.

**B.    Image Logos.**

Image file logos extracted from emails or documents should not be produced as separate documents.

**VII.   STRUCTURED DATA.**

Structured data should be produced in a mutually agreeable data exchange format. The Parties will meet and confer to determine the potentially relevant databases at issue, including the data fields included in such databases.

**VIII.  PRODUCTION MEDIA.**

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each

piece of Production Media shall include a unique identifying label and cover letter including the following information:

A.    Name of the litigation and its case number;

B.    Name of the Producing Party;

C.    Date of the production (mm/dd/yyyy);

D.    Bates number range;

E.    Confidentiality Designation; and

F.    Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media (see below)).

Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

## IX.    OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The parties shall negotiate in good faith concerning the production of any such ESI. If the parties are unable to reach agreement, the parties shall submit any dispute to the Court for resolution.

## X.      COST SHIFTING.

The producing party shall bear all costs of converting ESI from a native format to a non-native

format, and expressly waives any right to seek reimbursement or taxing of such costs pursuant to

28 U.S.C. § 1920 or any other state or federal cost-recovery provision.


So stipulated and agreed by the Parties, July 1, 2020.


LITE DEPALMA GREENBERG, LLC         KEITH ELLISON
                                    Attorney General
*/s/ Jeremy Nash*                   State of Minnesota
Jeremy Nash                         JAMES W. CANADAY
570 Broad Street, Suite 1201        Deputy Attorney General
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858           */s/ Justin Moor*
jnash@litedepalma.com               JUSTIN MOOR
                                    Assistant Attorney General
                                    445 Minnesota Street, Suite 1400
                                    St. Paul, Minnesota 55101-2134
                                    Telephone: (651) 757-1060
                                    justin.moor@ag.state.mn.us

                     *Counsel for the Plaintiff*


*/s/ Liza M. Walsh*                            IT IS on this 15th day of July, 2020,
Liza M. Walsh, Esq.                            SO ORDERED
WALSH PIZZI O'REILLY FALANGA LLP
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
Tel.:  (973) 757-1100

Michael R. Shumaker, Esq. (*pro hac vice*)
Julie E. McEvoy, Esq. (*pro hac vice*)
William D. Coglianese, Esq. (*pro hac vice*)   _____
JONES DAY                                      Hon. Lois H. Goodman, U.S.M.J.
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939

*Counsel for Defendant Sanofi-Aventis U.S. LLC*

*/s/ Melissa A. Geist*
Melissa A. Geist, Esq.
REED SMITH LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540
Tel.:  (609) 514-5978

Shankar Duraiswamy, Esq.
Henry B. Liu, Esq. (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Tel.: (202) 662-6000

*Counsel for Defendant Eli Lilly and Company*

*/s/ Christopher Walsh*
Michael R. Griffinger, Esq.
Michael R. McDonald
Christopher Walsh, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
Tel.:  (973) 596-4500

James P. Rouhandeh, Esq. (*pro hac vice*)
David B. Toscano, Esq. (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.:  (212) 450-4000

Neal A. Potischman, Esq. (*pro hac vice*)
Andrew Yaphe, Esq. (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
Tel.:  (650) 752-2000

*Counsel for Defendant Novo Nordisk Inc.*

## EXHIBIT 1

### FIELDS and METADATA TO BE PRODUCED

1.      The load files accompanying scanned paper documents will include the following objective

coding fields, to the extent applicable:

| Field | Field Description |
| --- | --- |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the

extent available, and/or unredacted:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
| --- | --- | --- | --- |
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a document family | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| CUSTODIAN | All custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| DUPLICATE CUSTODIAN | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation | Confidentiality designation | Confidentiality designation |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK (DPF) | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK (DPF) | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| AUTHOR | Document author from metadata | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

## EXHIBIT 2

## REQUESTED LOAD FILE FORMAT FOR ESI

1.    **Delimited Text File**. A delimited text file (.DAT File) containing the fields listed in Exhibit A should be provided. The delimiters for the file should be Concordance defaults:

- •      Comma – ASCII character 20 (¶)

- •      Quote – ASCII character 254 (þ)

- •      Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |
| PageCount: | Number of pages in the Document. |

**3.**    **Sample Data**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 1, 2020, I electronically filed a Joint Stipulated Protocol For

The Discovery Of Electronically Stored Information And Hard Copy Documents with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to all attorneys

of record.


By:     *Melissa A. Geist*
        Melissa A. Geist
        **REED SMITH LLP**
        506 Carnegie Center – Suite 300
        Princeton, New Jersey 08540
        (609) 987-0050
        mgeist@reedsmith.com

        Attorneys for Defendant Eli Lilly and Company