**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| STATE OF MINNESOTA, BY ITS ATTORNEY GENERAL, KEITH ELLISON, | : : : : : | |
| *Plaintiff,* | : : | Civil Action No.: 18-cv-14999 (BRM)(LHG) |
| v. | : : | |
| SANOFI-AVENTIS U.S. LLC, NOVO NORDISK, INC., AND ELI LILLY AND CO., | : : : : | |
| *Defendants.* | : : : | |

**THE STATE OF MINNESOTA'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................... 1

BACKGROUND ....................................................................................... 1

ARGUMENT ........................................................................................... 5

I.    THE STATE SHOULD BE PERMITTED TO ENJOIN DEFENDANTS' SCHEME
      TO DEFRAUD THE PUBLIC IN VIOLATION OF RICO, AS OTHER COURTS
      IN THE THIRD CIRCUIT HAVE PERMITTED. ............................................ 5

      A.    Courts in the Third Circuit Have Permitted Private Litigants to
            Pursue Injunctions Against Fraudulent Enterprises for
            Violations of RICO. ................................................................ 5

      B.    The State Respectfully Requests that the Court Follow Other
            Decisions in the Third Circuit and Permit the State to Seek an
            Injunction under RICO. .......................................................... 8

II.   THE STATE HAS PROPERLY RE-PLEADED ITS ALLEGATIONS THAT
      DEFENDANTS' FRAUDULENT PRICING SCHEME VIOLATES MINNESOTA'S
      FALSE STATEMENTS IN ADVERTISING ACT ("MFSAA"). ........................ 9

CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

FEDERAL COURT CASES

*Arizona v. California*,

 460 U.S. 605 (1983)................................................................8

*Bennett v. Berg*,

 685 F.2d 1053 (8th Cir. 1982).....................................................6

*Bridge v. U.S. Parole Comm'n*,

 981 F.2d 97 (3d Cir. 1992)........................................................8

*Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*,

 590 F.Supp. 1528 (W.D.Pa. 1984).................................................7

*Chevron Corp. v. Donziger*,

 833 F.3d 74 (2d Cir. 2016)..................................................5, 6, 7

*Foster Wheeler Corp. v. Edelman*,

 1987 WL 61446 (D.N.J. Dec. 9, 1987)............................................7

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,

 804 F.3d 633 (3d Cir. 2015).......................................................5

*In re Average Wholesale Price Litig.*,

 491 F.Supp.2d 20 (D. Mass. 2007)...............................................13

*McLendon v. Continental*,

 602 F.Supp. 1492 (D.N.J. 1985)...................................................7

*Nat'l Org. for Women, Inc. v. Scheidler*,

 267 F.3d 687 (7th Cir. 2001)......................................................6

*Pub. Interest Research Gp. of N.J. v. Magnesium Elektron, Inc.*,

   123 F.3d 111 (3rd Cir. 1997)...........................................................................8

*State of Minnesota v. Sanofi-Aventis U.S. LLC*,

   2020 WL 2394155 (D.N.J. Mar. 31, 2020)........................................ 1, 2, 3, 12

*Tuttle v. Lorillard Tobacco Co.*,

   2001 WL 821831 (D. Minn. July 5, 2001)....................................................13

*U.S. v. Local 560*,

   780 F.2d 267 (3rd Cir. 1985)........................................................................6

**STATE COURT CASES**

*Grp. Health Plan v. Philip Morris Inc.*,

   621 N.W.2d 2 (Minn. 2001)...................................................................11, 14

*Kronebusch v. MVBA Harvestore System*,

   488 N.W.2d 490 (Minn. Ct. App. 1992)............................................ 11, 13, 14

*State v. Philip Morris, Inc.*,

   551 N.W.2d 490 (Minn. 1996)......................................................................11

*UnitedHealth Grp. Inc., v. State of Minnesota*, No. A06-2013,

   2007 WL 4234545 (Minn. Ct. App. Dec. 4, 2007).........................................11

**FEDERAL STATUTES**

18 U.S.C. § 1961-1968 ...............................................................2, 6, 7, 8, 9

**STATE STATUTES**

Minn. Stat. § 325D.43-.48............................................................................1

Minn. Stat. § 325F.67............................................................................2, 10, 14

Minn. Stat. § 325F.68-.694...........................................................................1

## INTRODUCTION

Defendants have harmed many of Minnesota's most vulnerable citizens by fraudulently misrepresenting the price of their insulin products.  By widely disseminating false and misleading list prices through a series of deceptive public advertisements, Defendants have engaged in illegal conduct that violates both RICO and Minnesota's False Statement in Advertising Act.  The State of Minnesota respectfully requests that the Court deny Defendants' Joint Partial Motion to Dismiss the State's Second Amended Complaint, so that the State of Minnesota may have available the full scope of remedies it is entitled to pursue to end Defendants' fraud and the damage they continue to inflict upon the State of Minnesota and its citizens.

## BACKGROUND

On March 31, 2020, the Court granted in part and denied in part Defendants' Motion to Dismiss the State's First Amended Complaint.  *State of Minnesota v. Sanofi-Aventis U.S. LLC, et al.*, No. 18-cv-14999, 2020 WL 2394155 (D.N.J. Mar. 31, 2020) (ECF No. 74).  In that decision, the Court held that the State's allegations that Defendants have fraudulently misrepresented the price of their insulin products was legally sufficient to state a claim under Minnesota's Consumer Fraud Act, Minnesota Statutes section 325F.68-.694 and Minnesota's Uniform Deceptive Trade Practices Act, Minnesota Statutes section 325D.43-.48,

1

and that this fraud was also unjustly enriching defendants. *Id.* at *17-18 and *21-22.

The Court, however, dismissed without prejudice Counts I-XII of the First Amended Complaint, which alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-1968 (2020) ("RICO"). *Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 at *7-14. In doing so, the Court noted that the "Third Circuit has not directly addressed whether RICO allows for a private right of equitable relief," and cited the persuasive authority of cases from the District of New Jersey. *Id.* at *23.

The Court also dismissed without prejudice the State's Count XV brought under Minnesota's False Statement in Advertising Act, Minnesota Statutes section 325F.67 ("MFSAA"). *Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 at *18-19. In reaching its decision, the Court summarized the parties' arguments about whether the State had alleged that Defendants disseminated any "advertisements" covered under the MFSAA and whether the State's allegations were sufficiently pled. *Id.* at *19. Without ruling on whether the publication of Defendants' list prices for insulin were "advertisements" under the MFSAA, the Court held that the State's factual allegations were not sufficiently robust to sustain a cause of action under the MFSAA. *Id.* With respect to the State's allegations concerning Defendants' publication of list prices, the Court determined:

2

[U]nder the facts presented here the connection between the publication of list prices and consumer action [is] too attenuated to sustain a cause of action pursuant to the MFSAA.

*Id.*

With respect to the State's allegations that Defendants have caused the public dissemination of promotional and marketing materials with falsely inflated prices, the Court likewise held that:

Plaintiff's MFSAA claim regarding Defendants' dissemination of promotional and marketing materials [is] inadequately pled. The entirety of Plaintiff's allegations about this alleged conduct consists of a single sentence, repeated two separate times. While Plaintiff[] certainly need not provide exhaustive detail about each and every piece of promotional and marketing materials, the Court cannot conclude, on the basis of a single sentence, that they have adequately pled an advertisement under the MFSAA.

*Id.* (internal citations omitted).

The State subsequently filed a Second Amended Complaint ("SAC"), altering the relief the State sought under RICO, noting support for such relief in the Third Circuit. (ECF No. 77.) The State also presented newly alleged facts about the connection between Defendants' publication of misleading and deceptive list prices and the harm these false advertisements have caused consumers, including:

- Alleging that Defendants disseminated false advertisements through publicly available publications—including the Red Book, Gold Standard Database, and Medi-Span Price Rx—and noting that these publications cannot independently verify the accuracy of Defendants' deceptive and misleading prices because the rebates negotiated between Defendants and Pharmacy Benefit Managers ("PBMs") are confidential, which

3

establishes a direct line between Defendants' deceptive conduct and its dissemination to the public. (*Id.* ¶ 34.);

- Alleging that the trade publications that disseminate Defendants' false and misleading insulin prices advertise that their publications are used to set the price of prescription drugs through retail pharmacies that rely on Defendants' deceptive list prices, and that these pharmacies update the prices they charge for insulin in real-time in response to Defendants' misleading prices. (*Id.* ¶ 35 & 75.); and

- Alleging that at least one Minnesota pharmacy directly relies on false advertisements disseminated by two Defendants through the Gold Standard Drug Database to set inflated cash prices for insulin. (*Id.* ¶ 35.)

The State also alleged new facts to support its contention that Defendants

have caused false statements to be publicly disseminated through promotional and

marketing materials, including:

- Alleging that Defendants' publication of false and misleading prices causes PBMs to falsely advertise savings through prescription drug card programs that directly rely on Defendants' inflated prices by publishing promotional and marketing materials downstream in the drug supply chain, including entities advertising and distributing prescription drug card programs that are caused by Defendants' misleading list prices. (*Id.* ¶ 36 & 83-84); and

- Alleging that Defendants' publication of false and misleading prices causes PBMs to falsely market undiscounted drugs directly to consumers. (*Id.* ¶ 85-86).

After filing this Second Amended Complaint, Defendants again moved to

dismiss the State's Counts I-XII and XV. (ECF No. 93.)

4

**ARGUMENT**

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. . . . The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 637–38 (3d Cir. 2015) (footnotes and quotations omitted).

**I.     THE STATE SHOULD BE PERMITTED TO ENJOIN DEFENDANTS' SCHEME TO DEFRAUD THE PUBLIC IN VIOLATION OF RICO, AS OTHER COURTS IN THE THIRD CIRCUIT HAVE PERMITTED.**

The State should be afforded the same opportunity provided to private plaintiffs in the Third Circuit to develop its claims that Defendants must be enjoined from engaging in damaging and illegal racketeering activities in violation of RICO.

**A.     Courts in the Third Circuit Have Permitted Private Litigants to Pursue Injunctions Against Fraudulent Enterprises for Violations of RICO.**

While the Third Circuit has not expressly held that non-federal-governmental parties can obtain injunctive relief under RICO, the Third Circuit has indicated that the powers available to the Court under RICO extend beyond those specifically enumerated for private and federal government parties. That conclusion is the same as the one reached by the Second Circuit in *Chevron Corp.*

5

*v. Donziger*, 833 F.3d 74 (2d Cir. 2016) and the Seventh Circuit in *Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001).  Other circuits have also indicated that injunctive relief may be available to private parties.  *See Bennett v. Berg*, 685 F.2d 1053, 1064 (8th Cir. 1982).

RICO's civil remedies are divided into three parts: (a) relief in the Court's discretion; (b) relief specific to the United States Attorney General; and (c) relief specific to private parties seeking damages.  18 U.S.C. § 1964(a)-(c).  Defendants argue that because the injunctive relief in 1964(a) is not expressly extended to the private litigants mentioned in 1964(c), such relief is unavailable to private plaintiffs.  (Defs.' Memo. at 7-8.)  But the Third Circuit has held that the remedies in 18 U.S.C. § 1964(a) are available to parties whose rights of action are enumerated later in RICO.

For example, in *U.S. v. Local 560*, 780 F.2d 267 (3rd Cir. 1985), the district court ordered that the executive board of the defendant be removed as equitable relief under section 1964(a).  Such relief went beyond what is reserved to the government in section 1964(b), but the Third Circuit found that supplying a remedy in section 1964(a) to a plaintiff whose relief is otherwise specified in section 1964(b) is not only permitted, but specifically contemplated in the design of the statute.  *Local 560*, 780 F.2d at 295.  The same reasoning was applied in *Donziger*.  *See* 833 F.3d at 138 (noting statutory design of RICO and concluding it

6

is consistent with permitting private plaintiffs to pursue equitable remedies, including injunctive relief).  In this case, the State is seeking to pursue relief not reserved specifically to it by RICO, but rather the injunctive relief available to any party under section 1964(a).  Specifically, the State is requesting that the Court "impos[e] reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in. . . ."  18 U.S.C. § 1964(a).

District courts in New Jersey have recognized the need to keep RICO injunctive relief available to private plaintiffs past the motion to dismiss stage of litigation.  In *McLendon v. Continental Gp.*, 602 F.Supp. 1492, 1519 (D.N.J. 1985), the court observed that the law was in flux, specifically noting the Second Circuit's holding *against* injunctive relief, and that dismissal of the availability of injunctive relief before trial would be "unwise."  Citing *McLendon*, the court in *Foster Wheeler Corp. v. Edelman*, No. 87-4346, 1987 WL 61446, at \*6 (D.N.J. Dec. 9, 1987), similarly denied a motion to dismiss a private plaintiff's request for injunctive relief.  And a court in the Third Circuit's Western District of Pennsylvania affirmatively held that injunctive relief was available to private plaintiffs using the same logic present in *Donziger*. *Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*, 590 F.Supp. 1528, 1540-41 (W.D.Pa. 1984) (finding support in both the plain language and statutory history of RICO).

7

Because remedies, including injunctive relief, are available to non-federal-government plaintiffs under section 1964(a), and because courts within the Third Circuit have recognized that it is unwise to dismiss these claims for injunctive relief at this stage in litigation, the State respectfully requests that this Court follow other courts within the Third Circuit and permit the State to pursue injunctive relief under section 1964(a).

**B.      The State Respectfully Requests that the Court Follow Other Decisions in the Third Circuit and Permit the State to Seek an Injunction under RICO.**

Defendants erroneously assert that the State is precluded from seeking injunctive relief under RICO under the law of the case doctrine. (Defs.' Memo. at 4-5.) Applying the "law of the case" doctrine is within the sound discretion of the district court. *Pub. Interest Research Gp. of N.J. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3rd Cir. 1997). The law of the case doctrine "does not limit" the Court's authority. *Arizona v. California*, 460 U.S. 605, 618 (1983). Third Circuit precedent has recognized numerous, non-exclusive situations in which a Court need not follow the law of the case doctrine. *See, e.g.*, *Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 103 (3d Cir. 1992) (specifying factors).

The State respectfully requests that the Court exercise its discretion and allow the State to pursue injunctive relief under RICO. The Court's prior decision dismissing the State's RICO counts is from the same stage of litigation—the

8

preliminary motion to dismiss stage.  The parties have not begun litigation in

earnest, or taken depositions, or taken any costly actions in reliance on the Court's

prior decision.  Allowing the RICO injunction request to proceed would not work

any injustice or harm the cause of judicial economy.  The Court's prior decision

indicated that no cases from within the Third Circuit allowed private injunctive

relief under RICO, but the cases cited above indicate that courts in the Third

Circuit have allowed such claims to survive a motion to dismiss.

The State respectfully requests that the Court permit the State to pursue the

remedy of injunctive relief under RICO to stop Defendants' practice of routinely

transmitting fraudulently inflated insulin prices, which makes a lifesaving drug

unaffordable for many who need it.  Defendants are unlawfully "engaged in…the

conduct of [defendants'] affairs through a pattern of racketeering activity," 18

U.S.C. § 1962(c), and the State requests that it be permitted to develop its case that

this activity be enjoined.

## II. THE STATE HAS PROPERLY RE-PLEADED ITS ALLEGATIONS THAT DEFENDANTS' FRAUDULENT PRICING SCHEME VIOLATES MINNESOTA'S FALSE STATEMENTS IN ADVERTISING ACT ("MFSAA").

The State's new factual allegations directly connect the harm Defendants

have inflicted on Minnesotans through their public dissemination of false and

misleading list prices of insulin in two ways.  First, Defendants have placed before

the public a series of deceptive list prices that directly raise the price some

9

Minnesota pharmacies charge to vulnerable Minnesotans for their insulin. (SAC ¶¶ 34, 35, and 75.) Second, Defendants' false and misleading list prices indirectly cause entities downstream in the drug supply chain to falsely advertise that they are providing discounts to consumers in need of assistance. (*Id.* ¶¶ 36 and 83-86.) In each case, these false and misleading statements are advertisements under Minnesota law, and the State has therefore properly pled its allegations under the MFSAA.

> The MFSAA provides that it is violation of Minnesota law when any person:
>
> [M]akes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public . . . in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter . . . or in any other way, an advertisement of any sort regarding merchandise . . . or anything so offered to the public [that] contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading.

Minn. Stat. § 325F.67 (2020). Under Minnesota law, advertisements are those statements that "make announcement of" and "call the attention of the public to a product or business." *UnitedHealth Grp. Inc.*, *v. State of Minnesota*, No. A06-2013, 2007 WL 4234545 *4 (Minn. Ct. App. Dec. 4, 2007). Advertisements need not be directed at consumers, provided that the advertisements are: (1) disseminated to the public, (2) with the intent to sell something. *Kronebusch v. MVBA Harvestore System*, 488 N.W.2d 490, 494 (Minn. Ct. App. 1992). In

10

construing the MFSAA, "Minnesota courts have focused on the defendant's actions" rather than the potential actions or harm suffered by the public. *Id.* Minnesota's consumer protection statutes, including the MFSAA, must be "very broadly construed to enhance consumer protection." *State v. Philip Morris, Inc.*, 551 N.W.2d 490, 495–96 (Minn. 1996).

Defendants' publicly disseminated list prices are advertisements under Minnesota law because these deceptive statements:   (1) call attention to Defendants' products through the use of false prices and (2) are intended to—and did in fact—influence the sale of their insulin products.   Under Minnesota's broadly construed consumer protection statutes, these facts are sufficient to sustain a cause of action under the MFSAA at this stage of the litigation. *See Grp. Health Plan v. Philip Morris Inc.*, 621 N.W.2d 2, 11 (Minn. 2001) (stating it is not role of courts "to narrow the reach [of Minnesota's consumer protection statutes] where the legislature has spoken in unequivocally broad terms").

Defendants offer three unpersuasive arguments to dismiss the State's claims under the MFSAA.   First, Defendants claim that Court already "held that mere publications of insulin list prices are not 'advertisements' under the MFSAA." (Defs.' Memo. at 8.)   The Court made no such ruling and clearly stated that "*under the facts presented here,* the connection between the publication of list prices and consumer action [is] too attenuated to sustain a cause of action pursuant to the

11

MFSAA." *Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 at \*19 (emphasis added). As explained above, the State's newly alleged facts clearly establish this connection.

Second, Defendants contend that under the MFSAA, an advertisement must be a statement that is "directed" to a consumer. (Defs.' Memo. at 8.)  Defendants cite no case law interpreting the MFSAA for this bald assertion, and the Court has already correctly ruled that false or misleading statements need not be directed to consumers under Minnesota's consumer protection statutes.  *Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 at \*15 ("Because Defendant[s] fail[] to cite to any cases where courts have specifically held that Minnesota's consumer protection statutes require [deceptive] action to be specifically directed at consumers to be actionable, the Court finds, on this basis, they have failed to meet their burden to show that no claim has been presented.").  In fact, the Minnesota Court of Appeals has determined that the MFSAA prohibits the dissemination of false statements to "non-consumers" in order to "give full effect" to the Minnesota Legislature's intent "to punish the public dissemination of false advertising" regardless of its effect on consumers.  *Kronebusch*, 488 N.W.2d at 494; *accord In re Average Wholesale Price Litig.*, 491 F.Supp.2d 20, 84 (D. Mass. 2007) (recognizing advertisements need not be directed to "consuming public" to fall within conduct prohibited by consumer protection statutes).  Similarly, the advertisements covered under the

12

MFSAA are not limited to "traditional marketing" materials directed at consumers but include a broad swath of public statements. *See Tuttle v. Lorillard Tobacco Co.*, 2001 WL 821831, *6 (D. Minn. July 5, 2001) (finding no authority under MFSAA to limit "advertisements" to "traditional marketing" materials and instead adopting expansive definition of advertisements to include non-recorded, verbal statements made in public).

Finally, Defendants assert that there is no connection between their list prices and the actions of third-parties promoting prescription drug programs, and that in any event these prescription drug programs do not harm consumers. (Defs.' Memo. at 10-11.)    Contrary to Defendants' claims, the connection is straightforward:  By placing misleading and deceptive prices before the public, Defendants facilitate other entities downstream in the drug supply chain to falsely advertise that enrollment in their programs results in deep discounts, when in fact these drugs are made available at, or near, the actual, net price Defendants receive for insulin after sending rebates to PBMs. *See* Minn. Stat. § 325F.67 (prohibiting persons from *indirectly* causing another to publish, disseminate, circulate, or place before the public any material misrepresentations).  As the State alleges, these advertised drugs are never sold by Defendants at the benchmark prices from which the prescription drug card programs advertise they are discounting, and it is only through Defendants' advertisement of these inflated prices that prescription drug

13

card programs falsely advertise that consumers can obtain impressive-sounding discounts.  (SAC ¶¶ 36 and 83-86.)  In reality, the "discounts" are merely reflecting the real price of Defendants' drugs, while falsely advertising that the prescription drug card program has obtained some special price for a consumer.

Further, under the MFSAA, there is no requirement to show that a false advertisement caused a consumer to suffer financial harm.  *Kronebusch*, 488 N.W.2d at 494 (holding MFSAA "prohibits the public dissemination of misleading advertising with the intent to sell something to the public even if no one suffers pecuniary damages").  In fact, the State need not even allege that any consumers purchased a product in response to false advertising to sustain a cause of action under the MFSAA.  *See Grp. Health Plan*, 621 N.W.2d at 4 ("Based on the broad language of the four [consumer protection] statutes and the legislative intent that the statutes create remedies broader than those available in an action for common law fraud, we conclude that the HMOs are not required to be purchasers of the defendants' [tobacco] products in order to properly plead a claim under these statutes.").

Defendants have repeatedly placed false and misleading statements about the price of their products before the public with the intent that these deceptive statements influence the sale of their products—and these false advertisements have in fact affected the sale of their products.  These allegations are sufficient to

14

sustain a cause of action under the MFSAA at this stage, and the State respectfully requests that the Court deny Defendants' attempt to dismiss Count XV of the State's Second Amended Complaint.

## CONCLUSION

For the above reasons, the State's RICO and MFSAA counts are well pled and state viable claims against Defendants.  The State respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

**LITE DEPALMA GREENBERG, LLC**

Dated: August 25, 2020          */s/ Jeremy Nash*
                                Jeremy Nash
                                570 Broad Street, Suite 1201
                                Newark, NJ 07102
                                Telephone: (973) 623-3000
                                Facsimile: (973) 623-0858
                                jnash@litedepalma.com

                                **STATE OF MINNESOTA**

                                KEITH ELLISON
                                Attorney General
                                State of Minnesota

                                JAMES W. CANADAY
                                Deputy Attorney General

                                JASON PLEGGENKUHLE (*pro hac vice*)
                                Assistant Attorney General
                                445 Minnesota Street, Suite 1200
                                St. Paul, Minnesota 55101-2134
                                (651) 757-1147
                                jason.pleggenkuhle@ag.state.mn.us

15

ALEX K. BALDWIN (*pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2134
(651) 757-1020
alex.baldwin@ag.state.mn.us

JUSTIN MOOR (*pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2134
(651) 757-1060
justin.moor@ag.state.mn.us

NOAH LEWELLEN (*pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2134
(651) 757-1420
noah.lewellen@ag.state.mn.us

*Attorneys for State of Minnesota*

16