# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STATE OF MINNESOTA, BY ITS
ATTORNEY GENERAL, KEITH
ELLISON,

                *Plaintiff,*

   v.

SANOFI-AVENTIS U.S. LLC, NOVO
NORDISK, INC., AND ELI LILLY
AND CO.,

                *Defendants.*

Civil Action No. 18-14999
(BRM)(LHG)

**ORAL ARGUMENT REQUESTED**

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT PARTIAL MOTION TO DISMISS <u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

*(Counsel Listed on Next Page)*

**GIBBONS P.C.**
Michael R. Griffinger, Esq.
Christopher Walsh, Esq.
Michael R. McDonald, Esq.
One Gateway Center
Newark, NJ 07102-5310
Tel.: (973) 596-4500

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh, Esq. (*pro hac vice*)
David B. Toscano, Esq. (*pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman, Esq. (*pro hac vice*)
Andrew Yaphe, Esq. (*pro hac vice*)
1600 El Camino Real
Menlo Park, CA 94025
Tel.: (650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh, Esq.
Katelyn O'Reilly, Esq.
William T. Walsh, Jr., Esq.
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel.: (973) 757-1100

**JONES DAY**
Michael R. Shumaker, Esq. (*pro hac vice*)
Julie E. McEvoy, Esq. (*pro hac vice*)
William D. Coglianese, Esq. (*pro hac vice*)
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel.: (202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

**REED SMITH LLP**
Melissa A. Geist, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
Tel.: (609) 514-5978

**COVINGTON & BURLING LLP**
Shankar Duraiswamy, Esq.
Henry Liu, Esq. (*pro hac vice*)
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel.: (202) 662-6000

*Attorneys for Defendant Eli Lilly and Company*

**TABLE OF CONTENTS**

_____

P<small>AGE</small>

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ..................................................................................... 3

I.   THE COURT HAS ALREADY HELD THAT MINNESOTA MAY
     NOT BRING RICO CLAIMS SEEKING INJUNCTIVE RELIEF.............. 3

     A.   The Law of the Case Doctrine Precludes Minnesota from Re-
          Litigating Whether RICO Confers a Private Right of Action for
          Injunctive Relief. ................................................................. 4

     B.   Minnesota's Claim for Injunctive Relief Also Fails Because
          RICO Does Not Authorize Such Relief for Private Plaintiffs. ............ 7

II.  THE COURT SHOULD AGAIN DISMISS MINNESOTA'S FALSE
     STATEMENT IN ADVERTISING CLAIM. ................................. 9

CONCLUSION ................................................................................. 13

# TABLE OF AUTHORITIES

PAGE

## Cases

*Arizona v. California*,
  460 U.S. 605 (1983) ............................................................6

*Bridge v. U.S. Parole Commission*,
  981 F.2d 97 (3d Cir. 1992) ..................................................6

*Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*,
  590 F. Supp. 1528 (W.D. Pa. 1984) ....................................9

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) ..................................................6

*Curley v. Cumberland Farms Dairy, Inc.*,
  728 F. Supp. 1123 (D.N.J. 1989) ......................................7, 8

*Foster Wheeler Corp. v. Edelman*,
  1987 WL 61446 (D.N.J. Dec. 9, 1987) ................................8

*Futterknecht v. Thurber*,
  2015 WL 4603010 (D.N.J. July 30, 2015) ...........................7

*In re Insulin Pricing Litig.*,
  No. 17-cv-699, 2020 WL 831552 (D.N.J. Feb. 20, 2020) ..............7, 9

*In re Pharm. Indus. Average Wholesale Price Litig.* ("*AWP*"),
  491 F. Supp. 2d 20 (D. Mass. 2007) ....................................9

*In re Pharm. Indus. Average Wholesale Price Litig.* ("*AWP*"),
  582 F.3d 156 (1st Cir. 2009) ...............................................9

*Jenson v. Touche Ross & Co.*,
  335 N.W.2d 720 (Minn. 1983) ...........................................11

*Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*,
  728 F. Supp. 1142 (D.N.J. 1990) .........................................7

*Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*,
    662 N.W.2d 125 (Minn. 2003)................................................................12

*McLendon v. Cont'l Grp.*,
    602 F. Supp. 1492 (D.N.J. 1985) ..........................................................8

*Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*,
    No. 18-cv-14999, 2020 WL 2394155 (D.N.J. Mar. 31, 2020) ................... passim

*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
    No. 18-cv-2211, 2020 WL 831578 (D.N.J. Feb. 20, 2020)...................... 3, 4, 5, 7

*National Organization for Women, Inc. v. Scheidler*,
    267 F.3d 687 (7th Cir. 2001)..................................................................6

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
    No. 83-513, 1984 WL 6618 (D.N.J. Sept. 25, 1984)...........................12

*Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
    123 F.3d 111 (3d Cir. 1997)................................................................5, 6

*United States v. Local 560*,
    780 F.2d 267 (3d Cir. 1985)..................................................................8

## Statutes

Minn. Stat. § 151.74 subdiv. 13(a)(3) .................................................12

## Other Authorities

Minnesota Department of Health, Low Cost Options for Prescription Drugs,
    www.health.state.mn.us/facilities/insurance/clearinghouse/
    docs/prescription.pdf............................................................................11

## Rules

Federal Rule of Civil Procedure 12(b)(6) ..............................................1

Defendants Novo Nordisk Inc. ("Novo Nordisk"), Sanofi-Aventis U.S. LLC ("Sanofi"), and Eli Lilly and Company ("Lilly") ("defendants") respectfully submit this reply memorandum of law in support of their Partial Motion to Dismiss the State of Minnesota's Second Amended Complaint (the "Complaint" or "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

Minnesota's request that the Court reconsider its prior dismissal of the State's RICO claims is both untimely and meritless. Although the State concedes that the law of the case doctrine would require that its RICO claims be dismissed again, it erroneously argues that the Court is not bound by the doctrine here. To see the error in Minnesota's argument, this Court need look no further than its own precedent from earlier this year, when it rejected (in another insulin pricing case) other plaintiffs' attempts to advance a similar untimely reconsideration request. In any event, Minnesota has not provided this Court with any reason to revisit its earlier ruling, which correctly held that the State lacks standing to bring RICO claims seeking equitable relief.

---

[1] This reply uses the capitalized terms and abbreviations defined in defendants' opening brief. "Defs.' Br." refers to Defendants' Memorandum of Law in Support of their Joint Partial Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 93-1; "Opp." refers to The State of Minnesota's Memorandum of Law in Opposition to Defendants' Joint Partial Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 102.

Minnesota also asks the Court to revisit the dismissal of the State's claims under the Minnesota False Statement in Advertising Act ("MFSAA"), purportedly on the basis of new allegations. But Minnesota marshals no new allegations in support of its attack on the Court's core holding that "the connection between the publication of list prices and consumer action [is] too attenuated to sustain a cause of action pursuant to the MFSAA." *See Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*, No. 18-cv-14999, 2020 WL 2394155, at *19 (D.N.J. Mar. 31, 2020). Instead, Minnesota's challenge to this holding rests entirely on allegations that the Court expressly considered—and rejected—in its prior decision.

Minnesota's allegations regarding discount programs by third parties do not require a different conclusion. Minnesota claims that third party discount programs for insulin are fraudulent because those programs allegedly point to the AWP of insulin to make discounts off of that AWP sound significant. But those allegations are entirely at odds with Minnesota's theory of the case: the State cannot plausibly allege that providing discounted insulin prices to consumers is deceptive when Minnesota's central allegation is that consumers overpaid for insulin. Moreover, Minnesota pleads no facts and cites no law that would make defendants liable for allegedly deceptive statements made by third parties. Minnesota's unsupported allegation that defendants' reporting of list prices "enables other companies" to

mislead Minnesota consumers serves only to highlight the disconnect between defendants and any deception of consumers.

For these reasons and those set forth in defendants' opening brief—as well as those in defendants' briefs in support of dismissing Minnesota's first amended complaint—the Court should dismiss Minnesota's re-pleaded RICO claims and MFSAA claims.  As this is the *sixth* time the Court has considered the pleadings in insulin pricing cases, the Court should dismiss these claims with prejudice.

## **ARGUMENT**

## I.   **THE COURT HAS ALREADY HELD THAT MINNESOTA MAY NOT BRING RICO CLAIMS SEEKING INJUNCTIVE RELIEF.**

This Court previously held that Minnesota's RICO claims for injunctive relief should be dismissed because RICO does not establish a private right to equitable relief.  *See Minnesota*, 2020 WL 2394155, at *12.  Minnesota's attempt to re-plead the very same RICO injunctive relief claims runs afoul of the law of the case doctrine.  Indeed, earlier this year, this Court applied that doctrine in functionally identical circumstances when the plaintiffs in another insulin pricing action pending before the Court tried to re-plead RICO claims, notwithstanding the Court's dismissal of such claims.  *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 18-cv-2211, 2020 WL 831578, at *7 (D.N.J. Feb. 20, 2020).  Just as it did in *MSP*, the Court should reject Minnesota's re-pleaded RICO claims under the law of the case doctrine and dismiss them with prejudice.  Of course, even if Minnesota's

3

re-pleaded RICO claims were not procedurally barred, they would still be subject to dismissal because private plaintiffs do not have a right of action for injunctive relief under RICO.

### A.   The Law of the Case Doctrine Precludes Minnesota from Re-Litigating Whether RICO Confers a Private Right of Action for Injunctive Relief.

In their opening brief, defendants demonstrated that the law of the case doctrine "directs courts to refrain from re-deciding issues that were resolved earlier in the litigation" and that when a court "decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Defs.' Br. at 5 (quoting *MSP*, 2020 WL 831578, at *7 (citations omitted)).

Minnesota implicitly concedes that the law of the case doctrine bars its demand for injunctive relief, but insists that the Court "need not follow" the doctrine. Opp. at 8. But this Court has recently held that, absent a motion for reconsideration, it is bound by its prior decisions in a case. When the *MSP* plaintiffs filed a second amended complaint that re-asserted dismissed RICO claims, the Court concluded that they were requesting that this Court "reconsider its prior decision," and explained that it "may not" do so absent a formal motion for reconsideration. *MSP*, 2020 WL 831578, at *7.

The Court's ruling in *MSP* is entirely on point here, since the Court has already considered whether a private plaintiff such as Minnesota may "seek

4

equitable relief under RICO," and has held that "RICO does not establish a private right of equitable relief."  Defs.' Br. at 6 (quoting *Minnesota*, 2020 WL 2394155, at *12).  Under the same reasoning the Court applied in *MSP*, the law of the case doctrine dictates that the Court here "may not revisit its previous decision" on this issue.  *MSP*, 2020 WL 831578, at *7.

Tellingly, Minnesota does not so much as mention this Court's decision in *MSP* in its opposition, nor does it attempt to explain why the Court should not follow the same reasoning here.  Instead, Minnesota asks the Court to "exercise its discretion and allow [Minnesota] to pursue injunctive relief under RICO," notwithstanding the Court's prior ruling.  Opp. at 8–9.  But, as caselaw cited by Minnesota itself explains, courts "should be loathe" to revisit prior decisions "in the absence of extraordinary circumstances."  *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (citation omitted) (cited by Opp. at 8).  As set forth in *Magnesium Elektron*, the Third Circuit has recognized only three "extraordinary circumstances" that could "warrant a court's reconsideration of an issue decided earlier in the course of litigation": where "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice."  *Id.* at 116–17.  Minnesota cites no new evidence, no new law has been announced, and Minnesota does not—because it plainly cannot—contend that the Court's earlier

decision was "clearly erroneous."  To the contrary, Minnesota acknowledges that the "Third Circuit has not expressly held that non-federal-governmental parties can obtain injunctive relief under RICO."  Opp. at 5.  Minnesota has thus not attempted to show any of the "extraordinary circumstances" that would allow this Court to revisit its prior dismissal of Minnesota's RICO claims.[2]

Instead, Minnesota's brief in opposition to defendants' motion to dismiss is a thinly veiled attempt to seek reconsideration of the Court's prior ruling.  Minnesota argues that injunctive relief is available to private plaintiffs under RICO, relying on reasoning from out-of-circuit decisions.  Opp. at 5–6 (relying on *Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) and *National Organization for Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001)); *see also id.* at 6–7 (citing *Donziger* for the claim that the "statutory design of RICO . . . is consistent with permitting private plaintiffs to pursue equitable remedies").  This is the same argument, principally citing the same cases, that Minnesota made in its opposition to defendants' prior motion to dismiss—and that the Court rejected.  *See* ECF No. 54 at 5–11 (relying on

---

[2] Minnesota's other cited cases are unavailing.  *Bridge v. U.S. Parole Commission* is irrelevant because it involved the "new evidence" exception to the law of the case doctrine.  981 F.2d 97, 104 (3d Cir. 1992) ("This case squarely fits the exception premised upon the availability of new evidence.").  In *Arizona v. California*, the Supreme Court generally explained that the law of the case doctrine "directs a court's discretion" and that it "does not limit the tribunal's power."  460 U.S. 605, 618 (1983).  But that statement has no bearing here, in light of the Third Circuit's clear guidance that courts should follow the law of the case doctrine "in the absence of extraordinary circumstances."  *Magnesium Elektron*, 123 F.3d at 116.

*Donziger* and *Scheidler* and arguing that private plaintiffs may seek injunctive relief under RICO); *Minnesota*, 2020 WL 2394155, at *11–12 (holding that "a private party may not seek equitable relief under RICO" and rejecting Minnesota's arguments based on *Donziger* and *Scheidler*). It is thus clear that Minnesota—like the plaintiffs in *MSP*—is improperly requesting that this Court "reconsider its prior decision," despite not having timely moved for reconsideration. *MSP*, 2020 WL 831578, at *7.

### B. Minnesota's Claim for Injunctive Relief Also Fails Because RICO Does Not Authorize Such Relief for Private Plaintiffs.

The Court has now repeatedly held in this and other cases that "RICO does not establish a private right of equitable relief." *Minnesota*, 2020 WL 2394155, at *12; *see also In re Insulin Pricing Litig.*, No. 17-cv-699, 2020 WL 831552, at *3 (D.N.J. Feb. 20, 2020); *MSP*, 2020 WL 831578, at *7–8. As this Court has explained, courts within the Third Circuit have "affirmatively held" that such a private right is unavailable under RICO. *See, e.g.*, *Minnesota*, 2020 WL 2394155, at *12 (citing *Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1137 (D.N.J. 1989); *Futterknecht v. Thurber*, 2015 WL 4603010, at *4 (D.N.J. July 30, 2015); and *Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 728 F. Supp. 1142, 1146 (D.N.J. 1990)). This is because RICO limits the availability of

7

injunctive relief to actions brought by the federal government.  *See Curley*, 728 F. Supp. at 1137–38.

As explained above, Minnesota's argument to the contrary is chiefly predicated on out-of-circuit precedent that the Court has already, and properly, rejected.  Minnesota's newly cited cases do not help.  Minnesota relies on *United States v. Local 560*, but that case was brought *by the federal government*.  780 F.2d 267, 270 (3d Cir. 1985).  The fact that the district court granted the injunction sought by the federal government there has no bearing on whether a private plaintiff such as Minnesota is permitted to seek injunctive relief under RICO.  And to the extent Minnesota argues that *Local 560* stands for the proposition that the "statutory design of RICO" is "consistent with permitting private plaintiffs to pursue equitable remedies" (Opp. at 6–7), Minnesota advanced the same argument in its opposition to defendants' prior motion to dismiss, and this Court rejected it.  ECF No. 54 at 6–9; *Minnesota*, 2020 WL 2394155, at *11–12.  Minnesota's other cases are district court decisions that predate the line of cases in this District—starting with *Curley* in 1989—holding that private plaintiffs may not seek injunctive relief under RICO.  *See McLendon v. Cont'l Grp.*, 602 F. Supp. 1492, 1519 (D.N.J. 1985) (noting that the law was in "flux" and declining to address the issue because any decision would be "purely advisory in nature"); *see also Foster Wheeler Corp. v. Edelman*, 1987 WL 61446, at *6 (D.N.J. Dec. 9, 1987) (observing that, at the time, the "district courts in

8

this Circuit [were] in disagreement" on the issue); *Chambers Dev. Co., Inc. v. Browning-Ferris Indus.*, 590 F. Supp. 1528, 1540 (W.D. Pa. 1984) ("[C]ourts are split as to whether or not a district court's equitable powers extend to private plaintiffs in RICO cases."). Those cases accordingly provide no basis for the Court to disregard what it has identified as the "weight of persuasive authority" in this District on this issue. *Insulin Pricing*, 2020 WL 831552, at *3.

## II. THE COURT SHOULD AGAIN DISMISS MINNESOTA'S FALSE STATEMENT IN ADVERTISING CLAIM.

The Court should also reject Minnesota's attempt to re-plead a claim under the MFSAA. Minnesota effectively concedes that drug manufacturers such as defendants "are not advertising prices to the consuming public." *In re Pharm. Indus. Average Wholesale Price Litig.* ("*AWP*"), 491 F. Supp. 2d 20, 84 (D. Mass. 2007), *aff'd*, 582 F.3d 156 (1st Cir. 2009); *see also* Opp. at 12–13 (contending that Minnesota is not required to show that false statements were "directed to consumers" and arguing that "*other entities* . . . falsely advertise" the prices of defendants' drugs (emphasis added)). Rather, defendants establish a single list price—the wholesale acquisition cost—that reflects the "price at which a manufacturer sells a drug to a wholesale drug distributor." SAC ¶ 31. On that basis, the Court previously held that "the connection between the publication of list prices and consumer action [is] too attenuated to sustain a cause of action pursuant to the MFSAA." *Minnesota*, 2020 WL 2394155, at *19.

Minnesota's Second Amended Complaint includes no new allegations that detract from, much less undermine, that conclusion.  Minnesota principally argues that defendants' reported list prices should be considered "advertisements" because they indirectly affect the prices that pharmacies charge consumers and are reported in third-party industry publications.  *See* Opp. at 4, 10–11.  But that argument relies on the very same factual allegations that Minnesota invoked in opposition to defendants' initial motion to dismiss.  *See* First Am. Compl. (FAC) ¶ 34 ("Defendants disseminate and publish the benchmark prices they set for their products, including insulin, with a variety of reporting services"); *id.* ¶ 27 ("A pharmacy's cash price for insulin is directly connected to Defendants' benchmark prices for insulin, as discussed further below.").  The Court expressly considered those allegations in its prior opinion,[3] but held that they were "too attenuated" to state a claim under the MFSAA.  *Minnesota*, 2020 WL 2394155, at *2, *5, *19.

---

[3]  *See Minnesota*, 2020 WL 2394155, at *2 (acknowledging the State's claim that defendants report their prices to "a variety of public reporting services," and that pharmacies "rely" on these prices "to set their own prices" (citing FAC ¶¶ 34, 36)); *id.* at *5 (discussing the State's assertion that "the 'cash price' pharmacies charge is based on the benchmark price drug manufacturers charge wholesalers, plus a small markup" (citing FAC ¶¶ 74, 76)); *id.* at *19 (considering the State's argument that "even if the publishing of list prices themselves are not per se advertisements, their publication 'indisputably causes, directly or indirectly . . . the setting of insulin prices that *are* advertised to Minnesota diabetics by pharmacies and others'" (citing ECF No. 54 at 34 (in turn citing to FAC ¶ 36))).

Minnesota's contention that defendants violated the MFSAA through third-party discount programs is equally unpersuasive.  *See* Opp. at 13–14.  As an initial matter, the State cannot plausibly allege that the provision of heavily discounted insulin is somehow false or deceptive when Minnesota's central claim is that consumers paid allegedly inflated prices for insulin.  SAC ¶¶ 3, 72.[4]  In any event, Minnesota's Second Amended Complaint is devoid of any well-pleaded fact connecting defendants to any allegedly deceptive statement by a third-party discount program.  Minnesota advances only the unsupported assertion that defendants' list prices "*enable[] other companies* to further mislead Minnesota consumers."  SAC ¶ 83 (emphasis added).  Even if such a conclusory allegation were sufficient to satisfy the State's pleading burden, Minnesota does not cite a single case for reading the MFSAA so expansively.  Indeed, it defies logic to suggest that a statute imposing both civil and criminal liability could be read to penalize any market participant whose information allegedly is used by a third party to mislead consumers.  *See Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728 (Minn. 1983) (holding that the

---

[4] Minnesota's argument also cannot be reconciled with its own Department of Health's advice that consumers should seek out discount card programs.  Indeed, if Minnesota's argument were accepted, then its Department of Health would be responsible for distributing false advertisements under the MFSAA.  *See* Minnesota Department of Health, Low Cost Options for Prescription Drugs, at 2, 4, *available at* www.health.state.mn.us/facilities/insurance/clearinghouse/docs/prescription.pdf (directing consumers to "Free Prescription Drug Discount Cards" that are "pre-activated and ready to use at participating pharmacies," and referring to savings programs that provide "a savings of 25-40%" off of price on prescription drugs).

MFSAA applies only to "sellers who advertise" with an "intent to induce others to buy," and rejecting claim against accountant who provided an audit report that a third party included in an advertisement), *superseded in part by rule on other grounds as stated in Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 662 N.W.2d 125 (Minn. 2003).

Finally, even apart from the deficiencies described above, Minnesota's opposition conspicuously ignores that the State passed a law in April of this year *requiring* defendants to report their list prices for insulin products—*not* including rebates, discounts, or other price concessions—to the Minnesota Board of Pharmacy. *See* Defs' Br. at 10 n.5. Moreover, that law expressly provides that these list prices reflect the "value" of defendants' insulin products. MINN. STAT. § 151.74 subdiv. 13(a)(3). This directly contradicts Minnesota's claim that the list prices are "false" statements because they do not reflect the "real price" of insulin. SAC ¶ 73. Defendants' reporting of their list prices cannot be deemed a false and misleading advertisement when Minnesota's own law requires defendants to report that very same price as reflecting the "value" of the drug. The Court should therefore dismiss the MFSAA claim. *See, e.g., Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. 83-513, 1984 WL 6618, at *23 (D.N.J. Sept. 25, 1984) ("[L]iability cannot be based on compliance with a state law.").

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court dismiss with prejudice Minnesota's claims under RICO and the MFSAA.

Dated:   September 28, 2020         Respectfully submitted,

By:   */s/ Michael R. Griffinger, Esq.*
      Michael R. Griffinger, Esq.
      Christopher Walsh, Esq.
      Michael R. McDonald, Esq.
      **GIBBONS P.C.**
      One Gateway Center
      Newark, NJ 07102-5310
      Tel.:  (973) 596-4500

      James P. Rouhandeh, Esq.
        (*pro hac vice*)
      David B. Toscano, Esq.
        (*pro hac vice*)
      **DAVIS POLK & WARDWELL LLP**
      450 Lexington Avenue
      New York, NY 10017
      Tel.:  (212) 450-4000

      Neal A. Potischman, Esq.
        (*pro hac vice*)
      Andrew Yaphe, Esq.
        (*pro hac vice*)
      **DAVIS POLK & WARDWELL LLP**
      1600 El Camino Real
      Menlo Park, CA 94025
      Tel.:  (650) 752-2000

      *Attorneys for Defendant*
      *Novo Nordisk Inc.*

By:   */s/ Liza M. Walsh, Esq.*
      Liza M. Walsh, Esq.
      Katelyn O'Reilly, Esq.
      William T. Walsh, Jr., Esq.
      **WALSH PIZZI O'REILLY**
      **FALANGA LLP**
      Three Gateway Center
      100 Mulberry Street, 15th Floor
      Newark, NJ 07102
      Tel.:  (973) 757-1100

14

Michael R. Shumaker, Esq.
 (*pro hac vice*)
Julie E. McEvoy, Esq.
 (*pro hac vice*)
William D. Coglianese, Esq.
 (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel.:  (202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

By:   */s/ Melissa A. Geist, Esq.*
     Melissa A. Geist, Esq.
     **REED SMITH LLP**
     Princeton Forrestal Village
     136 Main Street, Suite 250
     Princeton, NJ 08540
     Tel.:  (609) 514-5978

     Shankar Duraiswamy, Esq.
     Henry B. Liu, Esq.
      (admitted *pro hac vice*)
     **COVINGTON & BURLING LLP**
     One CityCenter
     850 Tenth Street, N.W.
     Washington, DC 20001
     Tel.:  (202) 662-6000

     *Attorneys for Defendant*
     *Eli Lilly and Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of September 2020, I caused copies of Defendants' Reply Memorandum of Law in Support of their Joint Partial Motion to Dismiss Plaintiff's Second Amended Complaint and this Certificate of Service to be served to all counsel and parties of record via ECF.

Dated:   September 28, 2020

By:

*/s/ Michael R. Griffinger, Esq.*
Michael R. Griffinger, Esq.
Christopher Walsh, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
Tel.:  (973) 596-4500

*Attorneys for Defendant Novo Nordisk Inc.*